IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
JULIAN HARRISON,                      )
                                      )
            Plaintiff,                )
                                      )
      v.                              )   1:07CV00492
                                      )
STEVEN W. CHALMERS, individually      )
and as Chief of Police of the         )
Durham Police Department; CAPTAIN     )
D.L. DOWDY, individually and as       )
an officer of the Durham Police       )
Department; and THE CITY OF           )
DURHAM, NORTH CAROLINA,               )
                                      )
            Defendants.               )
```

## MEMORANDUM OPINION AND ORDER

**Eliason, Magistrate Judge**

This matter comes before the Court on Defendants' motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(b)(6), 12(c), and 12(h)(2).[1] Plaintiff, a freelance photojournalist, brought the present action against the City of Durham, North Carolina ("the City") and two of its police officers, Durham Police Chief Steven W. Chalmers ("Chalmers") and Captain D.L. Dowdy ("Dowdy"), in their official and individual capacities.[2] The complaint alleges that members of the Durham Police Department "harassed, assaulted, battered, unjustifiably arrested and falsely

---

[1] Rule 12(h)(2) simply provides that the defense of failure to state a claim upon which relief may be granted as set forth in Rule 12(b)(6) may be raised in a motion for judgment on the pleadings, as it is in the instant case.

[2] Plaintiff later dismissed all claims against Chalmers in his individual capacity.

charged [Plaintiff] with crimes" on multiple occasions. (Compl. ¶ 1.) Based on these allegations, Plaintiff brings the following causes of action: false arrest, assault and battery, and violations of his rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution and the North Carolina Constitution pursuant to 42 U.S.C. § 1983.

## Facts

The facts, in the light most favorable to Plaintiff, are as follows. At all times relevant to the lawsuit, Plaintiff was a photojournalist covering breaking news in North Carolina, particularly in and around Durham. In late 1991 or early 1992, Officer Sarvis of the Durham Police Department ("DPD") told Plaintiff to "'start behaving' or the police might make trouble for him." (Compl. ¶ 15.) Several months later, on May 12, 1992, Plaintiff received a ticket from Officer James of the DPD for being parked in the wrong direction while taking pictures of a car crash. (Compl. ¶ 18.) Officer James subsequently took out a warrant for Plaintiff's arrest on a charge of parking within 100 feet of a police vehicle, but those charges were later dismissed by the district attorney. (Compl. ¶¶ 19-22.)

On April 12, 1994, Plaintiff was again arrested by DPD officers, this time for allegedly resisting and obstructing a police officer. (Compl. ¶ 23-24.) Plaintiff contends that he was merely observing a standoff between DPD and a suspect from a nearby home at the time and did nothing to interfere with the operation. (Compl. ¶ 23.) Although he was convicted in Durham County District

Court, the district attorney voluntarily dismissed all charges for lack of evidence on appeal. (Compl. ¶¶ 25-29.)

Two more arrests followed in 1995. First, Officer Ailstock arrested Plaintiff on February 20th for failing to obey a traffic officer. Plaintiff, who was taking pictures of a vehicle crash, alleges that "Officer Ailstock employed excessive and unnecessary force and assaulted [him], causing torn tendons and severe bruising to [his] left hand." (Compl. ¶ 31.) Plaintiff claims that these injuries took "many months to heal" and "significantly impaired" his ability to work. (Compl. ¶ 32.) He also claims that, several days after the incident, other DPD officers at the Durham County Courthouse "discussed the fact that another officer 'just beat the shit out of him,'" and that he "'had it coming'" because he "'never leaves when we tell him'" and "'he thinks he can go anywhere he wants to with that camera.'" (Compl. ¶ 33.)

Although Plaintiff was eventually found not guilty of the charges brought against him, he was again arrested on November 25, 1995. On that date, the DPD surrounded a church in which a suspect was barricaded. (Compl. ¶ 35.) Plaintiff claims that, after the suspect "was overpowered and under control, [he] moved forward to get a picture" and was thereafter arrested and charged with resisting arrest by Officer Kelly. (Id.) This charge was later dropped. (Id.)

The complaint next details the events of November 17, 2002, when Plaintiff arrived at the scene of a burning recycling plant on Hoover Road in Durham. (Compl. ¶ 36.) Officer Weiss stopped

-3-

Plaintiff en route to the building and told him he could not proceed on Hoover Road. (Id.) When Plaintiff then cut through an apartment complex and parked on Hoover Road, Officer Weiss threatened to arrest him. (Id.) Plaintiff moved his car, but after he did so, Officer Weiss flagged him down. (Compl. ¶ 37.) At that point, Plaintiff requested that she call a supervisor, which she did. (Id.) Officer Weiss allegedly told the supervising officer, Jessica Black, that Plaintiff had used profanity to her, and Black subsequently confiscated Plaintiff's camera and arrested him on charges of "disorderly conduct, resisting a public officer, reckless driving, and operating a vehicle carelessly and heedlessly in wanton disregard of the rights or safety of others." (Id.) The district attorney later dismissed or deferred prosecution on all charges. (Compl. ¶ 39.)

On July 9, 2004, Plaintiff alleges that Officer Bloesch charged him with "resisting, delaying, and obstructing an officer in the discharge of his duty by 'crossing active traffic lanes of I-40'" after Plaintiff crossed the highway to take photographs and video footage of a traffic accident. (Compl. ¶ 40-47.) When the officer failed to appear in court, these charges, like those preceding them, were dismissed. (Compl. ¶ 48.)

On October 13, 2005, officers again ordered Plaintiff to leave the scene or face arrest when he arrived at a Durham apartment complex to investigate the pending arrest of a fugitive. (Compl. ¶ 49.) Plaintiff claims that other spectators, "including other

-4-

representatives of the news media," were not required to leave. (Compl. ¶ 51.)

The complaint next details three encounters between Plaintiff and members of the DPD during 2006. First, Plaintiff alleges that Officers Laconey and Jaynes obstructed him from photographing an accident scene involving a DPD cruiser, assaulted him, and threatened him with arrest on September 13, 2006. (Compl. ¶ 52.) On October 11, 2006, Plaintiff alleges that he was assaulted and threatened with arrest by Officers Gaddy and Broadwell as he attempted to photograph a second accident involving a police cruiser. (Compl. ¶ 53.)

The final incident of 2006 occurred on November 3rd, at the scene of a store shooting. (Compl. ¶ 55.) Defendant Dowdy approached Plaintiff as he took photographs and video from behind the crime tape erected by the DPD and threatened to arrest him if he took pictures of any witnesses. (Compl. ¶¶ 57-58.) When Plaintiff responded, "'You are not my picture editor,'" Defendant Dowdy allegedly grabbed Plaintiff's arm over the tape and "began to squeeze it" until Plaintiff complained that Dowdy was assaulting him. (Compl. ¶ 60-61.) At that point, Dowdy lunged through the tape, grabbed Plaintiff's neck and slammed him onto a parked car. (Compl. ¶ 62.) Plaintiff claims that he was injured by these events and by overly-tight handcuffing. (Compl. ¶¶ 66, 68.)

Following his arrest, Officers McCallop and McCoy transported Plaintiff to appear before Durham Magistrate Eric van Fleet. (Compl. ¶¶ 69-70.) After the two officers told Magistrate van

Fleet what had happened, the latter "told the officers to release Mr. Harrison because he had done nothing wrong." (Compl. ¶ 71-72.) The magistrate's decision was unswayed by a subsequent phone conversation with Defendant Dowdy and instructed the officers to return Plaintiff and his equipment to the shooting scene immediately. (Compl. ¶¶ 73-74.) Plaintiff later filed a citizen's complaint against Defendant Dowdy with the internal affairs unit of the DPD. (Compl. ¶ 77.)  On February 13, 2007, the department acknowledged that Dowdy's actions were both unbecoming a police officer and in violation of the DPD's media policies.  (Compl. ¶ 78.)  However, Plaintiff claims that the DPD took no action regarding his complaint, nor did they offer him any compensation for his injuries. (Id.) Accordingly, he filed the present action on June 22, 2007.

## Legal Standards

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a plaintiff must first comply with Fed. R. Civ. P. 8(a)(2), which requires "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, __ U.S. __, 127 S. Ct. 1955, 1964 (2007)(quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements

-6-

> of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true.

Twombly, 127 S. Ct. at 1964-65 (internal citations omitted). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 1969.

The standard by which the complaint is to be judged is the same to succeed under Fed. R. Civ. P. 12(c). 5A Charles Alan Wright & Arthur R. Miller, Federal Practice And Procedure § 1367 (2d ed. 1990); Ramirez v. Department of Corrections, Colo., 222 F.3d 1238 (10th Cir. 2000). Defendant must again show that the complaint does not state a claim for relief. Further, under both rules, the Court must construe all factual allegations in the light most favorable to Plaintiff. Republican Party of North Carolina v. Martin, 980 F.2d 943, 952 (4th Cir. 1992).

## Discussion

Defendants first argue that, because municipalities are immune from punitive damages, Plaintiff's punitive damages claims against the City of Durham and against Defendants Chalmers and Dowdy in their official capacities should be dismissed. This Court agrees. Although a municipality may be liable for compensatory damages in § 1983 actions, it is immune from punitive damages under that statute. Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981)("considerations of history and policy do not support exposing a municipality to punitive damages for the bad-faith

actions of its officials"). Because a suit against a governmental officer in his official capacity is the same, for purposes of recovery, as a suit against the governmental entity itself, Plaintiff is also barred from seeking punitive damages from the two Defendant officers in their official capacities. See Kentucky v. Graham, 473 U.S. 159, 165-66 (1985).

Plaintiff's state law claims for punitive damages fare no better. Municipalities are immune from such claims under the common law "in the absence of statutory provision to the contrary." Jackson v. Housing Authority of City of High Point, 316 N.C. 259, 263, 341 S.E.2d 523, 525 (1986)(quoting Long v. City of Charlotte, 306 N.C. 187, 208, 293 S.E.2d 101, 115 (1982)). Notably, to abrogate the common law, a statutory provision must do more than merely provide for punitive damages; it must remove governmental immunity for those damages. Jackson, 316 N.C. at 263.

In the present case, Plaintiff fails to cite any statute which specifically removes the Defendant City's immunity from punitive damages for the claims in this case. Instead, he relies on N.C. Gen. Stat. § 160A-485, which simply provides for a limited waiver of governmental immunity where a municipality has purchased liability insurance. This general waiver does not mention and, therefore, does not extend to punitive damages. Any waiver of punitive damages would be subject to the more exacting rule set forth in Long and its progeny. This is underscored by the fact that the North Carolina courts found a need to enunciate such a

rule in Long, despite the prior existence of section 160A-485. Moreover, section 160A-485(c) specifically states:

> Except as expressly provided herein, nothing in this section shall be construed to deprive any city of any defense to any tort claim lodged against it, or to restrict, limit, or otherwise affect any defense that the city may have at common law or by virtue of any statute.

Nothing in section 160A-485 expressly waives punitive damage claims against municipalities. Because punitive damages are not permitted absent statutory authority, there is no need, as Plaintiff contends, for the Court to look to the contract of insurance before ruling in this case. Insurance contracts do not constitute statutory authority. The cases Plaintiff cites to support his proposition only discuss the general extent to which damages have been waived by the purchase of insurance. See Layman ex rel. Layman v. Alexander, 343 F. Supp. 2d 483 (W.D.N.C. 2004); Reid v. Town of Madison, 137 N.C. App. 168, 527 S.E.2d 87 (2000); Houpe v. City of Statesville, 128 N.C. App. 334, 497 S.E.2d 82 (1998). They make no reference to punitive damages, let alone distinguish or negate Long. Therefore, all of Plaintiff's punitive damages claims must be dismissed against the Defendant City as well as Defendants Chalmers and Dowdy in their official capacities.[3]

Defendants next seek dismissal of Plaintiff's remaining claims against Defendants Chalmers and Dowdy in their official capacities, contending that these claims are duplicative of claims asserted against the city. The problem in this case arises because of the

---

[3]This decision does not impact Plaintiff's punitive damages claims against Defendant Dowdy in his individual capacity.

way the complaint is written. Plaintiff does not actually set out any "official capacity" allegations. Instead, he mentions the actions of individuals in Counts I-III. In Counts IV-V, Plaintiff directly alleges that the City violated his rights. Thus, these last two counts would seem to encompass any "official capacity" allegations, and since the City is directly named, it would seem that the "official capacity" allegations could be dismissed or dropped. It would have been better if Plaintiff clarified his position, rather than just resisting the motion. This is especially true because Chalmers only remains as a Defendant as a result of the official capacity allegations and, therefore, retaining him as a defendant imposes an unnecessary burden on him.

On the merits of the issue, Plaintiff fails to explain why it is necessary to retain the "official capacity" allegations. The Supreme Court has observed that "[t]here is no longer a need to bring official-capacity actions against local government officials, for under Monell, . . . local government units can be sued directly for damages and injunctive or declaratory relief." Kentucky v. Graham, 473 U.S. 159, 167 n.14 (1985); see also Monell v. Dept. of Soc. Serv., 436 U.S. 658 (1978). A municipality may only be held liable under § 1983 when that entity has caused Plaintiff's deprivation "through an official policy or custom." Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003)(quoting Carter v. Morris, 164 F.3d 215, 218 (4th Cir. 1999)). This situation may arise in four ways:

> (1) though and express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifests deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

Lytle, 326 F.3d at 471. Plaintiff appears to have used Counts IV and V for these types of allegations by directly naming the City. He admits that the Court may dismiss "official capacity" claims, (Pl.'s Br. at 2), and he fails to cite any prejudice to him were the Court to do so. In this case, the retention of official capacity claims merely constitutes an unnecessary burden to Defendant Chalmers. For these reasons, that part of Defendants' motion will be granted.

**IT IS THEREFORE ORDERED** that Defendants' motion for judgment on the pleadings (docket no. 22) is granted as to Plaintiff's punitive damages claims and all punitive damage claims, except as to those claims against Defendant Dowdy in his individual capacity, are hereby dismissed, and further the claims against Defendants Chalmers and Dowdy in their "official capacity" are dismissed, and that being the only claim against Defendant Steven Chalmers, he is hereby dismissed from this lawsuit.

/s/ Russell A. Eliason
**United States Magistrate Judge**

March 7, 2008